IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Mark E. ROBINSON, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

Mark E. ROBINSON, Respondent.

Supreme Court

*No. 2004AP1238–D. Decided June 24, 2005.*

2005 WI 88

(Also reported in 700 N.W.2d 757.)

¶ 1. PER CURIAM. We review the stipulation filed by Attorney Mark E. Robinson and the Office of Lawyer Regulation (OLR) concerning Attorney Robinson's professional misconduct in his handling of legal matters for a number of clients. The stipulation was submitted to Referee David R. Friedman. The referee reviewed the stipulation and issued a report recommending the level of discipline to which the parties stipulated, a six-month suspension of Attorney Robinson's license to practice law in Wisconsin. In addition, the referee recommended that Attorney Robinson be ordered to pay the costs of the disciplinary proceeding, which are $4,716.62 as of April 27, 2005.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence.

We also agree with the referee's conclusions of law that Attorney Robinson engaged in professional misconduct and further agree that the seriousness of the misconduct warrants a six-month suspension of Attorney Robinson's license to practice law in Wisconsin.

¶ 3. Attorney Robinson was admitted to practice law in Wisconsin in 1991. He practices law in Janesville with the firm of Roethe, Krohn, Pope, McCarthy & Haas, LLP. The OLR filed a complaint in May 2004, alleging that Attorney Robinson engaged in multiple counts of misconduct with respect to his handling of various client matters. All of the misconduct involved real estate transactions. The complaint alleged that in June of 2000, M.R. signed a real estate listing contract for the sale of property she owned in Janesville which she operated as a day care facility. M.R. added a restriction to the real estate listing contract prohibiting the sale of the property to any teachers who had formerly been associated with the day care center. On July 6, 2000, Attorney Robinson drafted a residential offer to purchase the property on behalf of his client, A.B., a developer. Attorney Robinson informed the real estate broker representing M.R. that his client was trying to find a residence for a carpenter who would assist him with some rental properties.

¶ 4. On July 12, 2000, Attorney Robinson, acting as agent for A.B., drafted a second offer to purchase M.R.'s property. Before accepting the offer, M.R. asked her broker to inquire of Attorney Robinson as to the identity of the buyer and whether the buyer was in any way associated with the day care facility. Attorney Robinson told the broker that his client was purchasing the property for an employee and intended to resell the property to the employee on a land contract. In reliance on those statements, M.R. accepted the offer to purchase.

¶ 5. Attorney Robinson subsequently became aware that A.B. was no longer interested in buying the property. Attorney Robinson then contacted three teachers who had formerly been associated with the day care center about the possibility of them operating a day care business on the property. In late July 2000, Attorney Robinson agreed with A.B. that Attorney Robinson would acquire the property from A.B. Attorney Robinson and the former day care facility teachers agreed that the teachers would buy the property on or about September 1, 2000. Attorney Robinson began arranging financing for the purchase of the property in his own name and advised his banker that he intended to lease the property for use as a preschool.

¶ 6. A.B. deeded the property to Attorney Robinson and sent the deed to Attorney Robinson by overnight mail. Attorney Robinson's legal assistant, acting on Attorney Robinson's instructions, notarized A.B.'s signature even though A.B. was not personally present. Prior to the closing of the property, M.R.'s real estate broker, on at least one occasion, advised Attorney Robinson that M.R. did not want to sell the property to anyone who had been formerly associated with her day care center. The sale of the property closed in late July 2000. At the closing M.R. questioned Attorney Robinson about the identity of the purchaser. Attorney Robinson failed to disclose that he would be purchasing the property from A.B. and selling it to three teachers formerly employed by M.R. at her day care facility.

¶ 7. Attorney Robinson formed JAC, LLC, a limited liability company, whose members were the three teachers formerly employed by M.R.'s day care facility. Attorney Robinson became the attorney for the LLC and its members. He entered into a land contract with JAC, LLC, conveying the property to the teachers. The

teachers sent out solicitations for a new day care center to be operated on the property. If M.R. had known that Attorney Robinson intended to convey the property to three former employees she could have refused to close the sale. Attorney Robinson's concealment of the identity of the ultimate owners of the property was intended to, and in fact did, deceive M.R.

■■■■■

¶ 8. The OLR's complaint alleged, and the referee agreed, that by instructing his legal assistant to notarize a signature indicating that the signer of the deed was present when in fact he was not, Attorney Robinson violated SCR 20:5.3(c)(1),[1] which would also be a violation of SCR 20:8.4(c)[2], if done by Attorney Robinson himself. The complaint further alleged, and the referee agreed, that by intentionally misrepresenting to M.R. and others the identity of the buyer of M.R.'s property, Attorney Robinson violated SCR 20:8.4(c). The complaint also alleged that by failing to obtain written conflict waivers during his representation of multiple parties who were participants in the same real estate transaction, in which Attorney Robinson also had a personal interest, Attorney Robinson violated SCR 20:1.7(b).[3]

---

[1] SCR 20:5.3(c)(1) provides: Responsibilities regarding nonlawyer assistants. "(c) A lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if: (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved."

[2] SCR 20:8.4(c) provides: Misconduct. "It is professional misconduct for a lawyer to: (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[3] SCR 20:1.7(b) provides: Conflict of interest: general rule. "(b) A lawyer shall not represent a client if the representation of

■

¶ 9. The OLR's complaint also alleged that on November 20, 2001, Attorney Robinson sent a letter to occupants of a building located on Mt. Zion Avenue in Janesville advising the occupants that the previous owner of the building, M.K., no longer owned the building and that the building was owned by Cajun Properties, an enterprise controlled by Attorney Robinson. On November 21, 2001, Attorney Robinson sent a letter to M.K. advising him that M.K. was in default on his agreement regarding the purchase of the property and that the agreement had been assigned to Attorney Robinson's interest. That same day Attorney Larry Barton sent a letter to Attorney Robinson advising that Attorney Barton represented M.K. and that all future communications about M.K.'s real estate should be directed to Attorney Barton. Thereafter, on several occasions while Attorney Barton was still representing M.K., Attorney Robinson attempted to contact M.K. directly and through a third party. The OLR's complaint alleged, and the referee agreed, that by attempting to contact M.K. directly and through a third party, despite M.K.'s counsel directing Attorney Robinson to have no further contact with M.K., Attorney Robinson violated SCR 20:8.4(a)[4] by attempting to violate SCR 20:4.2.[5]

---

that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests."

[4] SCR 20:8.4(a) provides: Misconduct. "It is professional misconduct for a lawyer to: (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another."

[5] SCR 20:4.2 provides: Communication with person represented by counsel. "In representing a client, a lawyer shall not communicate about the subject of the representation with a

¶ 10. The OLR's complaint further alleged that Attorney Robinson was introduced to G.W. through A.B., the developer involved in the purchase of the day care facility. After G.W. told A.B. that he wanted to refinance his home, A.B. suggested that G.W. set up a limited liability corporation to be used to refinance G.W.'s home and later to purchase some rental properties. During September 2000, Attorney Robinson drafted documents to establish a legal entity entitled GW Properties, LLC, with G.W. as the sole member and Attorney Robinson as the registered agent. In drafting the documents, Attorney Robinson acted as attorney for G.W. After Attorney Robinson prepared the documents creating GW Properties, LLC, G.W. and the LLC purchased two properties through Attorney Robinson and A.B. via land contracts. At the time of the purchase, Attorney Robinson did not give G.W. any actual written, signed land contracts.

¶ 11. Attorney Robinson had previously created a series of limited liability companies which he used on his own behalf and/or on behalf of others in acquiring various properties. Some of the companies he created were Caveland, LLC, Peregrine Cliff, LLC, Northeast Partners, LLC, and Cajun Properties, LLC. The various LLCs made offers to purchase five parcels of real estate. The offers for all five parcels were signed in ways that may have made them unenforceable by the sellers. All offers to purchase were drafted by Attorney Robinson.

¶ 12. Sometime in November 2000, Attorney Robinson called G.W. and told him the land contracts were ready for the two properties G.W. had purchased earlier and that G.W. should come to Attorney Robinson's office

party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so."

to sign them. In late November 2000, G.W. signed documents at Attorney Robinson's office relating to the two real estate purchases. Although the land contracts were signed by G.W., they were never signed by the seller and they were never recorded.

¶ 13. While in Attorney Robinson's office signing the land contracts, G.W. also signed a warranty deed transferring all five properties on which the various LLCs had made offers from GW Properties, LLC, to Cajun Properties. Attorney Robinson did not reveal to or discuss with G.W. the fact that G.W. was signing the five-parcel deed or that G.W. was involved in any transaction concerning the five parcels. At the time G.W. signed the deed, GW Properties, LLC, did not have title to any of the five properties that the deed purportedly conveyed. On December 1, 2000, the five parcels were conveyed to GW Properties, LLC, at a closing in Janesville. G.W. was unaware of any closing involving GW Properties, LLC, and did not attend the closing. Attorney Robinson never notified G.W. that a closing would take place.

¶ 14. At the closing, Attorney Robinson signed the transfer tax return and buyer's closing statement for the purchase of the five parcels, representing that he was the agent of GW Properties, LLC, for that purpose. Attorney Robinson's status as registered agent did not authorize him to act as the agent of GW Properties, LLC, in closing the transactions, and GW Properties, LLC, did not authorize Attorney Robinson to act as its agent for those purchases.

¶ 15. On the same day Attorney Robinson closed on the five parcels conveyed to GW Properties, LLC, Attorney Robinson had Cajun Properties acquire the five parcels from GW Properties, LLC, using the warranty deed previously executed by G.W. Neither G.W.

nor any representative of GW Properties, LLC, Peregrine Cliff, LLC, or Northeast Partners, LLC, was consulted about the multiple representation by Attorney Robinson and none of them consented in writing to the multiple representation.

¶ 16. At the time of the various transactions, G.W. was married to T.D. On the application for a taxpayer identification number for GW Properties, LLC, Attorney Robinson used T.D.'s social security number without her authorization or consent and without having established an attorney-client relationship with T.D. Attorney Robinson also wrote a letter to Toyota Motor Corporation in which he asserted he was T.D.'s attorney. Attorney Robinson never obtained T.D.'s authorization or consent to act on her behalf.

¶ 17. The OLR's complaint alleged, and the referee agreed, that by representing to G.W. that he had legally purchased rental property, when in fact the properties were purchased on incomplete and unrecordable land contracts, and by transferring properties to or through GW Properties, LLC, without G.W.'s knowledge or consent, Attorney Robinson violated SCR 20:8.4(c). The complaint also alleged, and the referee agreed, that by using T.D.'s social security number to obtain a taxpayer identification number for GW Properties, LLC, without T.D.'s permission and without ever establishing an attorney-client relationship with her and by contacting Toyota Motor Corporation purporting to represent T.D. when in fact he did not, Attorney Robinson violated SCR 20:8.4(c).

¶ 18. The complaint also alleged that in November 1999, Attorney Robinson organized Peregrine Cliff, LLC, with the Wisconsin Department of Financial Institutions and designated himself as its registered

agent. A.B., the developer, was the sole member of Peregrine. In September 2000, D.V.B. established an attorney-client relationship with Attorney Robinson for assistance in a residential real estate transaction with respect to a piece of property located on Caroline Street in Janesville. Attorney Robinson drafted and delivered to D.V.B. a residential offer to purchase showing Peregrine Cliff, LLC, as the buyer.

¶ 19. The purported signature for Peregrine Cliff, LLC, on the offer to purchase may have created an ambiguity as to the validity of the contract between D.V.B. and any other party. Attorney Robinson intended that D.V.B. rely on the offer to purchase as a binding contract for the sale of real estate. D.V.B. and his wife accepted the offer from Peregrine Cliff, LLC, and took their home off the market. The sale of the property was scheduled to close on October 23, 2000, but was delayed and rescheduled several times. By letter dated March 28, 2001, Attorney Robinson informed D.V.B. that Peregrine no longer wished to purchase the property. D.V.B. believed he had a binding offer to purchase from Peregrine and that he had a cause of action against Peregrine for breach of contract for not proceeding with the closing. At no time did Attorney Robinson disclose to D.V.B. that he was also the attorney for Peregrine.

¶ 20. The OLR's complaint alleged, and the referee agreed, that by simultaneously representing the conflicting interests of Peregrine Cliff, LLC, and D.V.B., without prior consultation and without obtaining a written conflict waiver, Attorney Robinson violated SCR 20:1.7(a).

¶ 21. The parties' stipulation states that Attorney Robinson is entering pleas of "no contest" to the charges against him. As noted above, the referee issued a report

incorporating the stipulation and adopting the recommended six-month suspension as well as the recommendation that Attorney Robinson pay the costs of the proceeding.

¶ 22. We adopt the findings of fact and conclusions of law to which the parties have stipulated, as also adopted by the referee. We determine that the seriousness of Attorney Robinson's misconduct warrants the suspension of his license to practice law for six months. We further agree that he should be required to pay the costs of the proceeding.

¶ 23. IT IS ORDERED that the license of Mark E. Robinson to practice law in Wisconsin is suspended for a period of six months, effective August 6, 2005.

¶ 24. IT IS FURTHER ORDERED that Attorney Robinson comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 25. IT IS FURTHER ORDERED that within 60 days of the date of this order Attorney Mark E. Robinson shall pay to the Office of Lawyer Regulation the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay those costs within that time, the license of Attorney Mark E. Robinson to practice law in Wisconsin shall remain suspended until further order of the court.